(137 App. Div. 106.)

QUINN v. WHITNEY et al.

(Supreme Court, Appellate Division, Second Department. March 31, 1910.)

CONTRACTS (§ 277*)—LIABILITY FOR BREACH.

Plaintiff's assignor agreed with defendants to purchase a certain quantity of stock in a corporation to be organized, and that 500,000 shares of the stock should be set aside for sale as directed by the directors, and the fiscal agent of the corporation, who was to be defendant W., was to sell 1 share of plaintiff's assignor's stock to every 5 of the 500,000. W. sold stock from the 500,000, without including any of plaintiff's assignor's stock. Plaintiff's assignor was director of the corporation when the sales complained of were made, and. did not complain because his stock was not sold, but put the purchaser in a position to take the stock of the corporation alone. Held, that the sale of plaintiff's assignor's stock by W. was optional with plaintiff's assignor, and plaintiff cannot, under the circumstances, complain of W.'s failure to sell it.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 277.*]

Hirschberg, P. J., and Carr, J., dissenting.

Appeal from Special Term, Nassau County.

Action by John Quinn against Thomas H. Whitney and another. From a judgment for plaintiff, defendants appeal. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, THOMAS, RICH, and CARR, JJ.

Charles E. Lydecker, for appellants.
Henry C. Burnstine, for respondent.

THOMAS, J. On July 23, 1907, Moore, plaintiff's assignor, and the defendants. entered into an agreement wherein the defendants were first parties. This contract recited an option upon mining property, and the intention of first parties to form·a corporation, whose

capital should be $1,000,000 and shares $1 each, and to transfer the option to such corporation, and further recited the second party's desire to purchase 174,000 shares of the stock. Thereupon follow stipulations, to be kept by the first parties, that the option shall be transferred to the corporation for 999,500 shares of its stock, that the second party shall be entitled to receive 174,000 shares for $8,700, payable in installments, and that "there shall be set aside for the account of said second party" shares to meet installments of payments, that 500,000 shares should be issued to a trustee to be appointed by the board of directors, but stipulated to be one Whitney, which stock "shall be sold at such price or prices as the board of directors may from time to time determine." The second party agreed to pay, as stated in the contract, to "Wiley, as trustee, on the express understanding and agreement * * * that said payments when so made shall be used solely for the benefit of said corporation." But the first parties made this further agreement, that underlies this action:

"That upon any sale or sales of said stock the said fiscal agent [Whitney meaning] shall sell for and on account of the second party one share for every five shares of such stock so set aside for the benefit of the Treasury until the net proceeds of such proportionate sale for his account shall equal the amount of cash paid by him under his purchase as above provided for."

This contract was satisfactorily fulfilled save in one respect. Between January 1 and July 1, 1908, Whitney, fiscal agent of the corporation, pursuant to the terms of the said agreement, sold of the trust stock 77,500 shares for $8,125, and did not include any of Moore's shares in such sale, and upon such grievance the plaintiff sues for damages, to wit, one-sixth of $8,125, or $1,354.17, for which sum judgment was ordered, less $165.40 received by plaintiff on a sale of his stock. The plaintiff's status depends upon a sale and transfer of 12,500 shares of stock by Moore on April 1, 1908, and a transfer, by instrument dated April 30th, of all his interest in the agreement of July 23, 1907. The plaintiff claims that this formal transfer embodied an oral transfer made when the stock was transferred. Plaintiff tendered defendants 12,917 shares of stock, one-sixth of the shares sold by them, and demanded one-sixth of the moneys received by them, and upon their refusal, and upon notice, sold for their account the stock in the market, and received the sum of $165.40 credited as above.

The court finds that neither defendant knew of the assignment of the contract of July 23, 1907, until May 29, 1908. The sale of the 77,500 shares, of which plaintiff complains, was in several lots, one on January 3, 1908, to Noyes and others, three equal lots to Clothier, severally on April 15, 22, and June 23, 1908. Clothier purchased his stock under an option agreement, which comprised "all the trustee stock of the corporation and all the stock of the parties hereto." Moore was an officer and director of the corporation from October 11, 1907, to April 28, 1908. The first inquiry is: What did the involved stipulation in the contract of July 23, 1907, mean? This is aided by reference to the respondent's brief:

"The clause of the contract material in this case was for the benefit of Moore's stock, and, if he could get the same benefit by a sale of all the stock to Clothier as by having Whitney sell it in connection with the trusteed stock for the treasury, he had a right to do this. He never agreed that he would hold this stock so that Whitney and Wiley could get one share to sell and deliver in connection with every five shares of the trusteed stock. This was optional with him, and only Whitney and Wiley were bound to take his stock and sell it if he so desired. Moore never even placed himself in a position where he could not deliver, if delivery became necessary. He escrowed his stock upon the same conditions as the 499,500 shares of trusteed stock were escrowed. If these were sold, his stock was sold; if they were not sold, his were not sold, and both went back to their respective owners, open to the operation of the agreement which had existed in the interim."

So the contract means that Whitney, the company's fiscal agent, shall sell at prices fixed by it from time to time the 500,000 shares issued to the trustee, and that the stock "set aside" for Moore shall participate to the extent of one-sixth in any sale at his option, but with the right reserved to him to sell elsewhere, and leave the option unexercised. What happened? In January, 1908, a sale was made to the Noyes party, and from April to June 23d to Clothier, by the defendant's fiscal agent, acting under the appointment of the directors, of which Moore was one, at prices presumptively fixed by the directors. Moore not only had knowledge of the transactions, but was an actor in them. The court has found that Moore and defendants acted as directors to promote the company and "to sell the stock of said company to Clothier"; that Moore "appeared, voted, and assented' to the escrowing of 497,500 shares of the trusteed stock of said corporation" with Clothier's attorney; and that on April 14, 1908, as trustee, he executed an escrow agreement for that purpose, and that on April 7, 1908, Moore and the defendants executed an agreement "whereby all the stock in their possession or under their control was escrowed in the hands of Ernest L. Conant, under an option contract of sale to Clarkson Clothier."

As a result of these options, Clothier took 75,000 shares of the "corporation's" stock, and Quinn, as Moore's successor in right, complains because Moore's personal stock was not taken by Noyes and Clothier. Moore was in a place of measurable command. His voice aided the determination of what should and should not be done. He as trustee and as individual signed the agreements with Clothier. He put Clothier in position to take the corporation's stock, or his stock, or none. Clothier took 75,000 shares of the so-called corporation's stock. Why should Moore complain? What was done grew out of his doing. He had an option to sell through the fiscal agent or otherwise as he pleased. There is no finding that he suggested a sale of his stock with the trusteed stock either to Noyes or to Clothier, or that the defendants, one or both, in any way precluded him or refused him, or that he signified to either that he wished to exercise his option; but, rather, freely, without indication of the slightest desire to participate, he took part in the sales. His counsel advises us that he was not obligated to sell in the stipulated proportion; that it was a matter of desire on his part. Then he should have expressed his desire. Instead of that, he helped to arrange the sales, and now complains through his assignee that he was not admitted to the sales.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur, except HIRSCHBERG, P. J., and CARR, J., who dissent.

